IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Gaffaney's of Williston, Inc., ) | |
| ) | |
| Plaintiff, ) | **ORDER RE MOTION FOR** |
| ) | **SUMMARY JUDGMENT BY** |
| vs. ) | **PLAINTIFF AND THIRD-PARTY** |
| ) | **DEFENDANTS** |
| Faison Office Products, Inc., ) | |
| ) | |
| Defendant and Third-Party ) | |
| Plaintiff, ) | |
| ) | Case No. 4-15-cv-170 |
| vs. ) | |
| ) | |
| Paul Weyrauch, individually, Gaffaney's ) | |
| Properties, LLP, ) | |
| ) | |
| Third-Party Defendants. ) | |

Before the court is Gaffaney's of Williston, Inc., Paul Weyrauch, and Gaffaney's Properties, LLP's motion for summary judgment. (Docket No. 40). Unless otherwise indicated, the following facts are undisputed, have not been sufficiently controverted, or are construed most favorably for defendant Faison Office Products, Inc.

**I. BACKGROUND**

In 2012, Faison Office Products, Inc. ("Faison") agreed to buy various business assets from Gaffaney's of Williston, Inc. ("GW"). The current motion focuses upon four documents executed to effectuate this transfer: (1) the Asset Purchase Agreement between Faison and GW ("Purchase Agreement"); (2) the Promissory Note given by Faison to GW; (3) the Lease between Faison and Gaffaney's Properties, LLP ("GP"); and (4) the Employment Agreement between Faison and Paul Weyrauch ("Weyrauch").

### A. Purchase Agreement

Under the Purchase Agreement dated December 31, 2012, Faison, among other assets, purchased the right to use the "Gaffaney's of Williston" business name and a Radio Shack franchise. Prior to closing the Purchase Agreement, Weyrauch, who served as CEO of GW, reached out to corporate Radio Shack indicating GW's desire to transfer the franchise. On or about December 11, 2012, Radio Shack emailed GW a transfer package that it required be completed prior to transferring the franchise. After closing the Purchase Agreement, GW forwarded this package to Faison on February 25, 2013. According to Faison, the package included numerous requirements that it deemed objectionable, including a requirement that the principals of Faison execute personal guaranties. Faison did not complete the package and, in December 2013, Radio Shack terminated the franchise.

### B. Promissory Note

In conjunction with the Purchase Agreement, Faison executed a Promissory Note in the amount of $950,000. Under the note, Faison's failure to pay the amount periodically due entitled GW to accelerate payment, with the outstanding balance becoming immediately payable.

### C. Lease with GP

Faison also executed a lease between itself and GP, under which Faison leased the building GW previously occupied in Williston. GP is a corporate entity distinct from GW, but, according to Faison, GW and GP have a largely common set of ownership and management. The Lease required Faison to pay the utilities used by Faison, including trash and garbage collection, during the course of Faison's occupation of the leased building.

### D. Weyrauch's Employment with Faison

Additionally, Weyrauch agreed to join Faison as Manager of Service and Maintenance. An Employment Agreement established the parameters of Weyrauch's employment. As is pertinent in the motion before the court, the Employment Agreement restricted the types of agreements into which Weyrauch could enter on Faison's behalf, providing "[Weyrauch] shall not financially bind [Faison] in any respect, without prior written approval of the Chief Executive Officer of [Faison]."

### E. The Fire and Aftermath

On July 7, 2013, a catastrophic fire destroyed the Williston building Faison leased from GP. By mutual agreement, Faison and GP terminated the Lease on July 8, 2013. The City of Williston removed debris created by the fire, depositing the debris in the city landfill. The City assessed disposal charges of $19,180.40. According to Faison, Weyrauch informed various city officials Faison was responsible for the charges. In September 2015, the City began threatening litigation against Faison in order to collect the disposal charges. According to Faison, it felt compelled to pay the disposal costs so as to preserve its goodwill with the City because the City was an important client, which it did in the amount of $20,602.03.[1] Still disputing its responsibility, Faison subtracted the $20,602.03 from a $52,449.07 installment payment to GW under the Promissory Note. After informing Faison it considered this to be a default, GW accelerated payment under the Promissory Note, making the outstanding balance immediately payable.

### F. Current Litigation

On December 2, 2015, GW initiated this action against Faison for breach of contract under the Promissory Note, unjust enrichment, and promissory estoppel. (Docket No. 1). As of the time

---

[1] This amount represented the initial disposal charges plus late fees.

of filing, $335,578.21 remained outstanding under the Promissory Note. After commencement of this suit, Faison paid the amount accelerated under the Promissory Note, leaving $20,602.03, the amount of the disposal charges, left unpaid under the Promissory Note In its amended answer, Faison alleged it had a right to offset the $20,602.03 from the amount due under the Promissory Note. (Docket No. 24). Faison also filed counterclaims against GW, alleging equitable indemnity and unjust enrichment relating to Faison's payment of the disposal charges and breach of contract under the Purchase Agreement for GW's alleged failure to facilitate the Radio Shack franchise transfer. Faison also included a different breach of contract claim under the Purchase Agreement for GW allegedly accepting payments from Faison's customers after execution of the Purchase Agreement. In addition to these counterclaims against GW, Faison included Weyrauch and GP as third-party defendants, claiming equitable indemnity against GP regarding the disposal charges and breach of contract against Weyrauch for allegedly violating the Employment Agreement.

## II. **DISCUSSION**

GW, Weyrauch, and GP argue they are entitled to summary judgment as to each of their respective claims against Faison and are entitled to the same as to most of Faison's claims and counterclaims. GW does not argue it is entitled to summary judgment on Faison's breach of contract counterclaim for GW's alleged receipt of payments from Faison's customers after execution of the Purchase Agreement.[2] The court and the parties are well-versed in the appropriate standard for summary judgment and the court will not repeat it here.

---

[2] Although GW's motion for summary judgment indicates it seeks summary judgment as to Faison's third counterclaim for breach of contract, the substance of GW's argument indicates it seeks summary judgment as to Faison's fourth counterclaim for breach of contract. The court will treat GW's motion as such.

## A. GW v. Faison

GW argues it is entitled to summary judgment on its breach of contract claim because Faison did not pay the full amount due under the Promissory Note. Faison argues it did not breach the Promissory Note because it had the right to offset the debris disposal charges from the amount owed under the Promissory Note.

"A setoff or offset 'allows parties that owe mutual debts to each other to assert amounts owed, subtract one from the other, and pay only the balance.'" Forbes Equity Exchange, Inc. v. Jensen, 2014 ND 11, ¶ 11, 841 N.W.2d 759 (quoting Dakota Partners, L.L.P. v. Glopak, Inc., 2001 ND 168, ¶ 21, 634 N.W.2d 520). Offsetting "recognizes that the debtor may satisfy a creditor's claim by acquiring a claim that serves to counterbalance or to compensate for the creditor's claim." Id. Any "valid offset necessitates a mutuality of debt between the parties." Id.

GW argues that Faison had no right of offset because it did not owe Faison anything for Faison having paid the debris disposal charge to the City. According to GW, if Faison was not responsible for the disposal charge under the Lease, the only other entity that could be responsible was GP, which GW contends is a separate entity.

While it is questionable whether any liability of GW to Faison with respect to the disposal charges could be a legal basis for refusing to pay on the promissory note, see N.D.C.C. § 41-03-31(1), Faison has failed to proffer any submissible evidence that: (1) GW (as opposed to possibly GP) had any liability to the City with respect to the waste disposal charges; (2) that GW and GP have ignored corporate formalities and, for that reason, should be treated as one and the same entity; or (3) that Weyrauch was acting on behalf of GW when he purportedly made the statement that Faison was liable for the disposal charge. In addition, Faison has failed to cite any authority for its

contention that GW can be charged with GP's obligations and liability based on the mere fact that the principals and management of GW and GP may be the same.

Given the failure of Faison to establish any basis for GW's liability to it with respect to the debris disposal charges, there was no mutuality of debt between the parties that provided a basis for the claimed setoff. Consequently, GW is entitled to summary judgment with respect to Faison's liability on the Promissory Note, but what remains to be calculated when it comes time to enter final judgment is the final amount owed after adding accrued interest.

### B. Faison v. GW

#### *1. Equitable indemnity and unjust enrichment counterclaims*

GW also argues it is entitled to summary judgment as to Faison's equitable indemnity and unjust enrichment counterclaims because those claims are again directed at the wrong party. Equitable indemnity "is a remedy which permits a party to recover reimbursement from another for the discharge of a liability that, as between the two parties, should have been discharged by the other." Grinnel Mut. Reinsurance Co. v. Center Mut. Ins. Co., 2003 ND 50, ¶ 39, 658 N.W.2d 363. This indemnity allows recovery if "one party is exposed to liability by the action of another party who, in law or inequity, should make good the loss of the other." Id. Similarly, but distinctly, unjust enrichment allows "restitution of benefits conferred 'in the absence of an expressed or implied in fact contract.'" Ritter, Laber and Assoc., Inc. v. Koch Oil, Inc., 2004 ND 117, ¶ 26, 680 N.W.2d 634 (quoting Midland Diesel Serv. and Engine Co. v. Sivertson, 307 N.W.2d 555, 557 (N.D. 1981)). "Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law." Id. "An essential element of

recovery under unjust enrichment is the receipt of a benefit by the defendant from the plaintiff that would be inequitable to retain without paying for its value." Id.

As already noted, Faison has failed to come forward with any submissible evidence that GW was ever responsible for the debris disposal charges. Absent that, there is no basis for a claim that Faison discharged a liability that should have been paid by GW or that GW suffered any enrichment by Faison's payment of the disposal charges. Hence, GW is entitled to a summary judgment of dismissal of Faison's claims of equitable indemnity and unjust enrichment.

*2. Breach of contract re Radio Shack counterclaim*

GW argues it is entitled to summary judgment as to Faison's breach of contract counterclaim regarding the Radio Shack franchise.[3] The first argument that GW makes for why that claim must be dismissed it that it fully performed its obligations under the Purchase Agreement and that any failure on the part of Faison to secure the Radio Shack franchise was its own fault.

In assessing whether Faison has a possible claim for breach of the Purchase Agreement for failing to have effectuated a transfer of the Radio Shake franchise, the court starts, as it must, with the Agreement itself. Unfortunately, neither party has submitted to the court a complete copy. Missing are the schedules and other exhibits that may relevant for reasons that will be addressed in a moment.

Working only from the portion of the Agreement that has been submitted by GW, one plausible reading (although, perhaps, not the only one) is that it contemplated that the Radio Shack franchise was a readily transferable asset that did not require Faison, or its principals, to incur

---

[3] GW does not address Faison's other counterclaim for breach of the Purchase Agreement alleging GW accepted payments from Faison's customers after the parties executed the Purchase Agreement and failed to turn the receipts over to Faison.

liabilities, except, perhaps, what might be in any existing franchise agreement between GW and Radio Shack.[4] If that turns out to be the case, there appears to be material issues of fact in dispute with respect to whether the Purchase Agreement was breached and, if so, whether there is any damage remedy available at this point and what those damages might be.[5]

GW also argues that Faison's breach of contract counterclaim must fail because it has not proffered evidence of actual damage. In support, GW cites Olson v. Fraase, 421 N.W.2d 820, 827 (N.D. 1988) (stating "[n]ominal damages are not recoverable in cases in which damages are an element of the claim for relief and the plaintiff has failed to prove those damages."), but this reliance is misplaced. Whatever might be the continued validity of Olson, it is appears to be limited to the tort causes of action that were the subject of that case. This is because the North Dakota Supreme

---

[4] GW argues that Faison agreed that it was purchasing GW's assets in an "as is" condition. An argument can be made, however, that this applies (if it applies at all to the Radio Shack franchise) only after the transfer of the franchise has been completed. Further, if the Purchase Agreement is construed as requiring that GW was obligated to secure a transfer of the franchise under the terms and conditions then existing, GW has not put forward any evidence as to what the "as is" condition was. And, it may be that Radio Shack's insistence that the principals of Faison execute personal guaranties was something that was not required of GW under its franchise agreement with Radio Shack.

[5] There are other parts of the Purchase Agreement that may be relevant. For example, in paragraph 3(e), GW represented that the only agreements to which it was a party that were material were those listed in Schedule 3(e), which has not been provided to the court. If there was an existing franchise agreement between GW and Radio Shack as Faison appears to suggest in its counterclaim and it was listed in Schedule 3(e), that might be relevant in several respects. First, it might support an argument that what the Purchase Agreement required was GW securing an assignment of that agreement to Faison. Second, it would have put Faison on notice of the existence of the agreement and the necessity for compliance with any conditions governing transferability, including any requirement for the execution of personal guaranties. On the other hand, if the existing agreement between GW and Radio Shack did not require personal guaranties from the principals of the franchisee, that may bolster Faison's argument for breach of contract.

Another provision of the Purchase Agreement that may be relevant is paragraph 3(h). In that paragraph, GW (1) represented that the only consents and approvals required for its performance of the Agreement were those spelled out in Schedule 3(h), and (2) agreed that it would secure the listed approvals and consents "by Closing unless otherwise waived by Buyer." Schedule 3(h) has also not be provided to the court. If the Radio Shack franchise was not listed in Schedule 3(h), that may tend to support Faison's claim for breach of contract. But, even if it was listed, there remains the question of what "consent" was contemplated. That is, whether it was consent to an assignment or transfer of any then existing franchise agreement between GW and Radio Shack with no materially new obligations and GW taking the risk that Radio Shack might not agree or whether it was simply consent to a transfer by Radio Shack of the franchise subject to any terms and conditions that might impose with Faison taking the risk of any new terms or conditions it might find objectionable. Schedule 3(h) might shed some light on that question.

-8-

Court has since held that nominal damages are recoverable in cases for breach of contract where the breach causes no loss or where damages cannot be proven with reasonable certainty. Hummel v. Mid Dakota Clinic, P.C., 526 N.W.2d 704, 709 (N.D. 1995) (stating a "party who proves a breach of a contractual duty, but who fails to prove damages resulting from the breach, is entitled to nominal damages only."); see also Restatement (Second) of Contracts § 346(1) cmt. b. Morever, the court is not persuaded at this point there is no possibility of Faison being able to recover more than nominal damages.

While GW's motion for summary judgment of dismissal of Faison's claim for breach of the Purchase Agreement as it relates to the Radio Shack franchise will be denied, the court remains skeptical of the claim as well as Faison's ability to prove the damages it is claiming.[6]

## C. Faison v. GP

GP argues it is entitled to summary judgment as to Faison's equitable indemnity claim because the Lease between GP and Faison required Faison to pay the disposal costs. Faison disagrees contending, among other things, that the Lease did not require it to pay the disposal costs. The Lease provision in question reads, in relevant part, as follows:

> **Section 18. Utilities; Taxes; and Insurance.**
> a. Throughout the Lease Term Tenant shall pay directly to all providers of utilities to the Premises the costs of Tenant's usage of such utilities (including without limitation electric, water, and gas services as well as trash garbage and recyclable collection). * * * *

---

[6] One of the arguments that Faison makes in its briefing for why GW breached the Purchase Agreement was the failure of Weyrauch to have forwarded to it the transfer packet from Radio Shack prior to closing so that it could have been made aware of the requirements that Radio Shack was insisting upon. The court doubts that this alone gives rise to any liability. If there was an existing agreement between GW and Radio Shack that spelled out the things that Faison later claims were objectionable, Faison is likely responsible for its failure to have demanded a copy before closing and exercising its own due diligence. As for any claim that Faison was lulled into complacency by representations made by Weyrauch, the court is not convinced at this point this would be a basis for a breach of contract claim, which is the only claim that Faison has pled. Cf. Bourgois v Montana-Dakota Utilities Co., 466 N.W.2d 813 (N.D. 1991).

Under North Dakota law:

> The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. Contract terms are read as a whole to determine the intentions of the parties and are given their plain, ordinary, and usual meaning. Each term of a contract is construed to avoid rendering other terms meaningless. A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense. Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone, and a court will not resort to construction where the intent of the parties is expressed in clear, unambiguous language. Extrinsic evidence may not be introduced to vary or contradict the terms of an unambiguous agreement or to create an ambiguity.

Schwarz v. Gierke, 2010 ND 166, ¶ 16, 788 N.W.2d 302 (internal citations, quotations, brackets, and punctuation omitted).

Faison argues the Lease obligated it to pay utilities of the same kind and character as those listed in the utilities clause, which are typical of those used by commercial tenants, and not, in this instance, the extraordinary cost of removing debris resulting from the destruction of the leased premises. The court agrees. Trash, garbage, and recyclable collection under plain and reasonable meanings are not synonymous with building debris resulting from the destruction of the leased premises. Further, with GP being obligated under the Lease to make available the leased premises, it would be unreasonable to conclude that Faison used the City's debris removal within the meaning of the utilities clause.

Because the Lease did not obligate Faison to pay the disposal costs, it does not provide GP with a defense to Faison's equitable indemnity claim. Consequently, the court will deny GP's request for dismissal of that claim.

## D. Faison v. Weyrauch

Weyrauch argues he is entitled to summary judgment regarding Faison's breach of contract claim under the Employment Agreement. The Employment Agreement provides Weyrauch "shall not financially bind [Faison] in any respect, without the prior written approval" of Faison's CEO.

Weyrauch argues any communication he may have had with the City of Williston did not bind Faison to pay the disposal charges, meaning he did not violate the Employment Agreement. In North Dakota, contractual obligations may arise explicitly or implicitly. N.D.C.C. § 9-06-01 (stating a "contract is either express or implied."). Without an explicit contract with the City obligating Faison to pay the disposal fees, any contract binding Faison must have arisen through implication. Under North Dakota law, "implied contracts are based on the surrounding facts and circumstances to determine whether or not the parties actually intended to enter into a contract but failed to articulate their promises." Lund v. Lund, 2014 ND 133, ¶ 12, 848 N.W.2d 266.

Here, there is some evidence that Weyrauch advised the City that Faison would be responsible for the debris removal costs. At this point, the court is not prepared to conclude that Faison has no claim against Weyrauch. Consequently, the court will deny Weyrauch's request for dismissal of Faison's breach of the Employment Agreement claim.

### E. GW's requests for attorney's fees

*1. GW's claim for breach of the Promissory Note*

In its brief in support of its motion for summary judgment, GW argues it is entitled to attorney's fees in enforcing the terms of the Promissory Note. The Promissory Note provides: "In the event that [GW] or any subsequent holder utilizes the services of an attorney to collect any past due amounts under this Note, [Faison] agrees to pay the reasonable fees and expenses actually

incurred by [GW] or such subsequent holder in connection with such efforts." The note also provides, however, that it "shall be governed by and construed in accordance with the laws of the State of North Dakota."

Under North Dakota law, most attorney's fees provisions in debt instruments are void. Specifically:

> **28-26-04. Attorney's fee in instrument void.**
> Any provision contained in any note, bond, mortgage, security agreement, or other evidence of debt for the payment of an attorney's fee in case of default in payment or in proceedings had to collect such note, bond, or evidence of debt, or to foreclose such mortgage or security agreement, is against public policy and void.

After Faison pointed out the invalidity of the attorney's fee provision in the Promissory Note, GW made no effort to argue the Promissory Note did not in this instance qualify as one of the debt instruments referenced in N.D.C.C. § 28-26-04, probably because there is no argument to be made. See, e.g., T.F. James Co. v. Vakoch, 2001 ND 112, ¶¶ 7-13; 628 N.W.2d 298; Farmers Union Oil Co. of New England v. Maixner, 376 N.W.2d 43, 48-49 (N.D. 1985). Rather, GW shifted gears in its reply brief by trying to argue it is entitled to attorney's fees based on a breach of the Purchase Agreement. The Purchase Agreement contains the following provision for recovery of attorney's fees:

> If any party shall commence any action or proceeding against another party in order to enforce the provisions hereof, or to recover damages as the result of the alleged breach of any of the provisions hereof, the prevailing party therein shall be entitled to recover all reasonable costs incurred in connection therewith, including, but not limited to, reasonable attorney's fees.

The problem for this argument is twofold. First, GW's motion for summary judgment clearly only sought recovery for the unpaid amounts based on a breach of the Promissory Note. Second, and more fundamentally, this appears to be because GW never pled in its complaint a claim for breach

of the Purchase Agreement as it relates to the failure of Faison to pay all amounts due under the Promissory Note.[7]

GW's request for attorney's fees in connection with it claim for breach of the Promissory Note is **DENIED**.

### III. CONCLUSION AND ORDER

Based on the forgoing, the **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment at Docket No. 40 as follows:

1. **GRANTS** GW's request for summary judgment as to liability for all remaining principal and interest due under the Promissory Note with further proceedings required to determine the exact amount owed for purposes of entry of final judgment after adding accrued interest.

2. **GRANTS** GW's request for summary judgment of dismissal of Faison's first counterclaim for equitable indemnity and its second counterclaim for unjust enrichment.

3. **DENIES** GW's request for summary judgment of dismissal with respect to

---

[7] GW contends in its reply brief that it pled a claim for breach of the Purchase Agreement by its references in the complaint to the Purchase Agreement. The court disagrees. The operative count of GW's complaint is Count I, which plainly alleges only a breach of the Promissory Note for the failure of Faison to fully pay the amounts due under the Note. Absent in Count I (as well as in any part of the complaint incorporated into Count I by reference) is an allegation that Faison's failure to pay constituted a breach of the Purchase Agreement or that breach of the Promissory Note also amounted to a breach of the Purchase Agreement.

Further, there may be a good reason why GW never pled a breach of the Purchase Agreement. While the court need not make any final decision now, the operative language in that portion of the Purchase Agreement that GW has provided arguably required only that Faison pay the purchase price for the acquired assets at the time of closing, which it did in part by paying cash and in part by executing several promissory notes. Noticeably absent is any language stating that the obligation to pay the purchase price under the Purchase Agreement extended beyond the date of closing or that a breach of the promissory notes would constitute a breach of Purchase Agreement. In addition, what also may be telling is GW's failure in its reply brief to point to any particular provision of the Purchase Agreement that it claims was breached along with an explanation for why that created an obligation to pay the purchase price that continued after the closing date.

Faison's fourth counterclaim for breach of contract relating to the alleged failure to secure a transfer of the Radio Shack franchise.

4. **DENIES** GP's motion for summary judgment of dismissal of Faison's equitable indemnity claim with respect to the waste disposal charges.

5. **DENIES** Weyrauch's request for summary judgment of dismissal of Faison's breach of the Employment Agreement claim.

6. **DENIES** GW's request for attorney's fees under the Promissory Note.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court